UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

CHRISTINE WHITE, individually and on
behalf of the heirs at law and wrongful death
beneficiaries of the "unnamed" deceased fetuses
and as the natural mother of the "unnamed"
deceased fetuses, et al.                                                    PLAINTIFFS

V.                                                    CIVIL ACTION NO. 3:09cv120-DPJ-FKB

MALCOLM E. MCMILLIN, individually
and in his official capacity as Sheriff of Hinds
Co., MS, et al.                                                    DEFENDANTS

ORDER

        This civil rights action is before the Court on Defendant Malcolm E. McMillin's Motion

for Summary Judgment in his individual capacity [4]. The motion was filed on April 13, 2009,

and briefed by the parties thereafter. The Court granted a Rule 56(f) continuance on October 30,

2009, and subsequent to the extended period of discovery, the parties have completed additional

briefing. Having considered the parties' submissions and applicable authority, the Court finds

Defendant's motion should be granted for the reasons set forth below.

I.      **Facts & Procedural History**[1]

        On April 29 or 30, 2007, Plaintiff Christine White was arrested by the Jackson Police

Department and taken to Hinds County Detention Center ("HCDC") for processing, at which

time she complained of vaginal spotting and feeling ill. White was transported to the University

of Mississippi Medical Center ("UMC"), diagnosed as pregnant with twins and suffering from a

urinary tract infection. She was prescribed medication and returned to HCDC. White did not

_____

        [1] The facts, generally undisputed at this point, are presented in the light most favorable to
Plaintiffs, and they largely come from Plaintiffs' Response [11] and supporting affidavits.

receive the prescribed medication.  On or about May 2, 2007, White informed other inmates she was not feeling well, was suffering from a urinary tract infection, and was bleeding vaginally. She told her guards she needed to see a doctor, and they ignored her.

On May 4, 2007, White asked the guards to arrange a follow-up appointment at UMC. The guards responded that, per policy, they would have to take her to Raymond Detention Center ("Raymond").  At Raymond, White was informed that the staff there was incapable of providing prenatal care and an appointment would be arranged for her at UMC.  White was transported to UMC and examined on May 9.  White was told to increase her daily nutrition intake, advice which the defendants ignored.  She was prescribed further medications, including prenatal vitamins and antibiotics, which she does not allege defendants denied her.

On multiple occasions following May 9, White complained of cramping and bleeding to HCDC guards and nursing staff but was denied treatment and told she must wait until she was passing blood clots before she would be treated or transported to another facility.  One day White awoke with her bed covered in blood and was taken to see a nurse, who told her there was nothing wrong, gave her Tylenol, and sent her back to her cell.  The bleeding and cramps continued.  The defendants required that White perform her regular daily work duties.  On May 29, White executed a form titled "Medical and Dental Treatment Refusal and Informed Consent," indicating that she refused medical treatment at HCDC, had been informed of the consequences, and waived her right to treatment.  Ex. C to Pls.' Suppl. Resp. [23] at 7.

On June 4, 2007, White was transported to Raymond for a bond hearing on additional charges.  She began cramping and passing blood clots and was unable to attend the hearing. White was transported back to HCDC, where she asked for emergency medical treatment.  The

guards took her to the nurse on duty, who offered transportation to Raymond for treatment. White refused and was given Tylenol and told to return to her cell and lie down. Further requests for emergency medical treatment were ignored.

On June 6, White awoke around 2:00 a.m. and found her bed covered in blood. She was suffering from cramps and doubled over in pain. Other inmates "began beating on the bars and screaming for the guards to come help [her]." White Aff. ¶ 8. After fifteen or twenty minutes, guards came and told her "to sit on the toilet and try to use the bathroom." *Id.* White delivered her stillborn babies into the toilet. The guards repeatedly ordered another inmate, Yolanda Banks, to flush the toilet to dispose of the fetuses, despite Ms. Banks's protests. When the fetuses would not flush, Banks complied with the guards' orders to remove the fetuses from the toilet and throw them in the trash. An ambulance was called around 4:00 a.m., arrived around 4:20 a.m., and transported White to the emergency room at Central Mississippi Medical Center ("CMMC"). Doctors at CMMC "verified that [White] had suffered an incomplete abortion," and White was returned to HCDC. *Id.* ¶ 9.

White, her deceased fetuses' father Christopher Wallace, and White's other children filed the instant suit against Hinds County and Malcolm E. McMillin, individually and in his official capacity as sheriff of Hinds County, in the Circuit Court of Hinds County on December 4, 2008. In the Complaint, Plaintiffs make claims of wrongful death, medical negligence, negligence, civil conspiracy, and intentional and negligent infliction of emotional distress by the Defendants. Construed liberally, the Complaint also includes a § 1983 claim for violation of White's constitutional right to adequate medical treatment. Defendants removed on the basis of this federal question, and this Court has subject matter jurisdiction.

## II.    Standard

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  *Id*. at 324.  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little*, 37 F.3d at 1075.  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000).

### III.    Analysis

If true, the facts of this case are sickening.  However, the issue now before the Court is not whether constitutional rights were violated, but whether Defendant McMillin, who had no personal knowledge of White's ordeal, is entitled to qualified immunity from Plaintiffs' federal claims and immunity from state law claims based on various immunity provisions of the Mississippi Tort Claims Act, particularly Mississippi Code Annotated sections 11-46-5 through 11-46-9.

### A.    Qualified Immunity from Federal Claims

Qualified immunity is a shield from individual liability for "'government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'"  *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  It is "an entitlement not to stand trial or face the other burdens of litigation." *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense.  *Hampton v. Oktibbeha County Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007).  In the summary judgment posture the court "'looks to the evidence before it (in the light most favorable to the plaintiff).'"  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

Courts use a two-step analysis to determine whether qualified immunity applies. "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, if a violation has been alleged, the court must determine "'whether [the officers'] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'" *Id.* (quoting *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)). "The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur County, TX*, 245 F.3d 447, 457 (5th Cir. 2001). "An official is eligible for qualified immunity even if the official violated another's constitutional rights." *Id*. The objective reasonableness of official action is an issue of law reserved for the court. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

It is within the lower court's discretion to decide which prong of the qualified immunity analysis to address first. *Collier*, 569 F.3d at 217 (quoting *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009)). In particular, *Pearson* observed that "there are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." 129 S. Ct. at 818. In the present case, the Court first examines whether McMillin violated White's constitutional rights with respect to the way she was treated and certain alleged unofficial policies or customs. Next, the Court will consider the official policies of the HCDC,

but in doing so will skip to the second prong and determine whether McMillin acted with objective reasonableness.

Plaintiffs contend that McMillin was personally responsible under § 1983 for their injuries because he was deliberately indifferent to White's medical needs. Section 1983 provides a civil cause of action against persons who violate constitutional rights while acting under color of law. 42 U.S.C. § 1983. "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). For liability to exist "under § 1983 there must be some connection between the [supervising officer's] action and the alleged constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996) (citing *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986)).

In asserting deliberate indifference, Plaintiffs have relied upon the correct standard for evaluating episodic acts or omissions like those reflected in their Complaint. *See Brumfield v. Hollins*, 551 F.3d 322, 328 n.4 (5th Cir. 2008) (citing *Flores v. County of Hardeman*, 124 F.3d 736 (5th Cir. 1997)) (explaining that deliberate indifference standard applies when plaintiffs first complain of acts or omissions directed at them and derivatively challenge customs and policies).

It is well established that "pretrial detainees [like White] have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson*, 245 F.3d at 457 (collecting cases). "A prison official shows deliberate indifference if 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference.'" *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

In the present case, there is no evidence suggesting that McMillin was aware of White's serious medical needs.[2] In addition, there is no competent record evidence that McMillin was aware of any custom or policy of guards ignoring the HCDC's official health related policies.[3] No claim of deliberate indifference can survive as to matters beyond McMillin's knowledge. *Brewster*, 587 F.3d at 770. Accordingly, Plaintiffs have failed to meet their burden of showing McMillin violated White's constitutional rights as to the acts of his subordinates and any purported unofficial customs or policies.

However, Plaintiffs also contend that McMillin's officially adopted policies are unconstitutional for their failure to more specifically address pregnancy-related medical concerns. They also contend that McMillin failed to adequately train his employees regarding pregnancy-related healthcare issues. Such claims do address McMillin's personal involvement and will be considered in turn. As noted, the Court will skip to the second prong of the qualified immunity analysis and determine whether McMillin acted with objective reasonableness. *Collier*, 569 F.3d at 217.

---

[2] For this reason, Plaintiffs' citations to cases on the deliberate indifference of those personally involved in the alleged violation, such as *Coleman v. Rahija*, 114 F.3d 778 (8th Cir. 1997) and *Archer v. Dutcher*, 733 F.2d 14 (2d Cir. 1984), are to no avail.

[3] Plaintiffs do point to another pregnancy-related suit filed some ten years earlier and other less relevant records of different types of medical issues at the facility. Ex. A to Ex. G to Pls.' Resp. [10]. However, the information regarding the other decade-old claim is sketchy at best and fails to demonstrate that McMillin adopted or condoned the custom Plaintiffs allege. *See Baker*, 75 F.3d at 199. In fact, the other incident occurred before the present policies were in place.

1.      Policies

Starting with the polices, "clearly established law require[s] that in a claim alleging failure to promulgate policy as a basis for § 1983 liability, the failure must be an intentional choice and amount to subjective deliberate indifference.  In other words, it must be obvious that the likely consequences of not adopting a policy will be a deprivation of civil rights."  *Brumfield*, 551 F.3d at 328 (internal quotations omitted) (citing *Evans v. City of Marlin*, 986 F.2d 104, 108 (5th Cir. 1993); *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992)); *see also Thomas v. Prevou*, No. 1:05cv707-KS-MTP, 2008 WL 111293, at *9 (S.D. Miss. Jan. 8, 2008) (citing *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003)).

The HCDC adopted numerous healthcare-related policies.  Richard Van Egmond, the Training Director for the Hinds County Sheriff's Department, stated in his affidavit that, during the relevant period, the HCDC had in place policies and procedures regarding employee conduct and the provision of medical care to inmates/detainees.   Ex. C to D.'s Mot. [4] ¶ 4.  Those policies included the provision of "a physician on call 24 hours a day/seven days a week." *Id*. ¶ 5.  In addition, Defendant has produced extensive written policies addressing the medical needs of inmates/detainees, including those with medical emergencies.  See  Exs. H-M to Def.'s Suppl. Resp. [22].  One of those polices specifically addressed the healthcare needs of pregnant inmates and was adopted "[t]o ensure pregnant inmates receive timely and appropriate prenatal care specialized obstetrical services when indicated."  Ex. L to Def.'s Suppl. Resp. [22].

In addition, to the pregnancy specific policies, the HCDC also addressed medical emergencies in more general terms, stating that "[i]n the event of a medical emergency, the discovering staff member shall:  Contact Central Control in the most expedient means possible

(telephone, intercom, hand radio, etc.).” Ex. F to Def.’s Mot. [4] at 14.  This policy is consistent with Defendant McMillin’s testimony that serious medical conditions must be reported.  Ex. A to Pls.’ Suppl. Resp. [23], McMillin Dep. at 45-47.  Finally, there is no dispute in the record evidence that the policies and procedures complied with prevailing state law.

Plaintiffs fault these procedures for, *inter alia*, Defendants failure to employ a medical provider trained in obstetrics and gynecology; failure to adopt policies specific to pregnancy-related issues; and failure to provide inmates with pregnancy-related literature.  Having reviewed the policies Defendant produced, the Court concludes that Plaintiffs have fallen short in their burden of demonstrating that McMillin’s actions were objectively unreasonable.

While the polices could be arguably better, Plaintiffs have offered no authority suggesting the HCDC policies (as opposed to the actions of the guards with respect to White) were objectively unreasonable as written.  According to the Fifth Circuit, when determining objective reasonableness, the Court may still consider the information known to the Defendant. *Thompson*, 245 F.3d at 462-63.  Here, Plaintiffs presented evidence demonstrating that there is a fairly significant population of pregnant inmates or detainees.  And yet, Plaintiff has failed to produce any record of a pregnancy-related problem, other than her own, after adoption of the HCDC’s polices.  *See* Ex. L to Def.’s Suppl. Resp. [22] (stating that policy became effective in April 2003).  Given the policies related to medical emergencies, the policies related to pregnancy, and the absence of pregnancy-related problems under the relevant policies, the Court cannot say that “all reasonable officials in the defendant’s circumstances would have then known

that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson*, 245 F.3d at 457.[4]

## 2. Training

Plaintiffs also contend that McMillin failed to train his employees regarding pregnancy-related medical issues. The standard on a failure to train use is as follows:

> A sheriff not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under section 1983 if: 1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.

*Thompson*, 245 F.3d at 459. "[F]or a supervisor to be liable for failure to train, 'the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform.'" *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378 (1989); *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)).

Plaintiffs acknowledge, and the record supports, that some training took place. *See, e.g.*, Ex. C to Def.'s Mot. [4] Van Egmond Aff. ¶¶ 3, 4, 6, 7; Ex. I to Def.'s Mot. [4] at 60; Ex. A to

---

[4]Plaintiffs rely in part on the Eighth Circuit Court of Appeals' decision in *Boswell v. Sherburne County*, 849 F.2d 1117 (8th Cir. 1988). There the court found that summary judgment was not appropriate where a sheriff trained jailers to "use their own judgment about the seriousness of prisoners' medical needs, rather than being directed to consult trained medical personnel." *Id*. at 1123. There was also evidence that the desire to hold down medical expenses led to the adoption of the policy. *Id*. This case is factually distinguishable because officers of the HCSB "shall" contact Central Control in the event of a medical emergency. There is no record evidence suggesting that untrained guards are to make a medical diagnosis of the sort in *Boswell*.

Pls.' Suppl. Resp. [23], McMillin Dep. at 45-47.  However, it appears that the employees, such as guards, were trained regarding the handling of emergency medical issues generally rather than specifically for pregnancy-related issues.  Upon this fact, Plaintiffs argue that the training was inadequate.  *See, e.g.*,  Pls.' Resp. [11] at 6 ("total lack of training, supervision and direction regarding the care and custody of pregnant inmates"); Pls.' Suppl. Resp. [23] at 22 ("The absence of any training of detainment personnel recognizing the need for emergency care and life-threatening situation of pregnant inmates and detainees is so blatantly and obviously defective as to render Defendant McMillin's conduct as consciously indifferent to the rights of pregnant inmates and detainees.").  Plaintiffs insist that "[t]his Court must recognize that . . . [jail personnel] responsible for housing pregnant inmates and detainees must receive . . . training . . . specifically related to recognizing the need for emergency care and life-threatening situations of pregnant inmates and detainees."  Pls.' Suppl. Resp. [23] at 22-23.

Even assuming a lack of training caused White's injuries, Plaintiffs would have to establish McMillin's deliberate indifference to her rights.  A finding of deliberate indifference generally requires "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights" and "at least a pattern of similar violations," and "the inadequacy of training must be obvious and obviously likely to result in a constitutional violation."  *Thompson*, 245 F.3d at 459 (citations omitted).[5]

Plaintiffs' claims are similar to those in *Thompson*, where a detainee died of delirium tremens (DTs).  Like McMillin, the sheriff in *Thompson* had no knowledge of the incident, but

_____

[5]The facts of this matter do not fall within the narrow "single-incident"exception applied in *Burge v. St. Tammany Parish*, 336 F.3d 363, 373 (5th Cir. 2003).

the plaintiffs asserted claims under § 1983 for failing to train employees to treat detainees with DTs.  245 F.3d at 452.  The Fifth Circuit first acknowledged that DTs pose a serious medical need, *id*. at 457, but affirmed summary judgment based on qualified immunity, noting the lack of precedent establishing the need to "have their jail personnel medically trained respecting the likely medical seriousness of an inmate suffering from DTs and the need to have such an inmate promptly receive medical care . . . ."  *Id*. at 463.[6]

In the present case, Plaintiffs claim that the training was inadequate because it failed to specifically address pregnancy.  However, HCDC adopted both specific and general polices applicable to White's medical needs.  Plus, the training complied with the "basic training program prescribed by the Board of Law Enforcement Officer Standards in accordance with Mississippi law."   Ex. C to Def.'s Mot. [4] ,Van Egmond Aff. ¶ 7.  And, like in *Thompson*, there is no relevant history suggesting that the training created a substantial risk of serious harm.

Ultimately, Plaintiff has produced no relevant authority suggesting that it is clearly established that the training was inadequate.  As stated in *Hope v. Pelzer*, "in the light of pre-existing law the unlawfulness must be apparent."  536 U.S. 730, 739 (2002).  Under these circumstances, the Court cannot say that Plaintiffs met this burden.  *See also Thompson*, 245 F.3d at 457.

---

[6]*Thompson* has come under criticism for defining the constitutional violation too narrowly.  *See Hart v. Tex. Dep't of Criminal Justice*, 106 Fed. App'x. 244 (5th Cir. 2004).  However, the case still offers guidance as to the state of the law as it relates to McMillin's training efforts.  It also appears that the *Thompson* court was particularly narrow in its discussion of another sheriff who did have actual knowledge of the detainee's medical condition.  In any event, this Court has not applied a narrow definition of the conduct as in *Thompson*.

3.      Other Allegations

Finally, the Court addresses an argument raised in Plaintiffs' supplemental response [23] wherein they suggest that McMillin's failure to investigate or otherwise discipline the guards responsible for the disposal of White's fetuses indicates deliberate indifference.  Abhorrent though the unrebutted allegations are, McMillin's conduct *after* the alleged violations has no bearing on the question of his deliberate indifference to the training or supervision of HCDC guards that allegedly *caused* the violations reflected in the Complaint.  *See Lehman v. Leichliter*, No. 2:03 CV 1432, 2004 WL 5482307, at *3 (W.D. La. Nov. 30, 2004) (excluding testimony that supervisory official's failure to take corrective action showed deliberate indifference because "this after-the-fact action cannot be said to be a cause of the deprivation of rights complained of by plaintiffs").

Because Plaintiffs have not met their threshold burden of rebutting the objective reasonableness of McMillin's conduct, McMillin is entitled to qualified immunity as to Plaintiffs' constitutional claims under § 1983 against him in his individual capacity.[7]

B.      State Law Immunity

As to state law claims, McMillin makes several arguments for immunity based on provisions of the Mississippi Tort Claims Act ("MTCA"), Mississippi Code Annotated sections 11-46-1 *et seq*.  "The MTCA provides the exclusive civil remedy against a governmental

---

[7] Plaintiffs claim of civil conspiracy, if it is a federal claim (which is unclear), also fails for the reason that there is no triable question of fact as to McMillin's individual liability for an underlying violation.  *See Mowbray v. Cameron County, Tex.*, 274 F.3d 269, 277 (5th Cir. 2001) (holding defendants cannot be liable for § 1983 conspiracy to commit an act for which they are otherwise immune from suit).

employee for acts or omissions which give rise to a suit." *Watts v. Tsang*, 828 So. 2d 785, 791 (Miss. 2002) (quotation marks and citation omitted). Generally, "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." *Estate of Johnson v. Chatelain ex rel. Chatelain*, 943 So. 2d 684, 687 (quoting Miss. Code Ann. § 11-46-7(2)). There is "a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment." Miss. Code Ann. § 11-46-5(3), *cited in Estate of Johnson*, 943 So. 2d at 687. However, "if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations," the employee was not acting within the course and scope of employment. Miss. Code Ann. § 11-46-5(2).

In their supplemental response [23] Plaintiffs argue for the first time that McMillin was not acting within the course and scope of his duties because he committed a crime either by desecrating the remains of White's fetuses, pursuant to Mississippi Code Annotated Section 97-29-25, or by failing to return a known offender to law enforcement, pursuant to Mississippi Code Annotated Section 97-11-35. Plaintiffs' Complaint fails to allege a violation of state law based on either of these statutes, and a party may not create new claims in response to a motion for summary judgment. *See Gomez v. LSI Integrated LP*, 246 F. App'x 852, 854 (5th Cir. 2007) (citing *Roeder v. Am. Postal Workers Union, AFL-CIO*, 180 F.3d 733, 737 n.4 (6th Cir. 1999) (refusing to consider on appeal unpled claim raised for the first time in response to a motion for summary judgment)).

There is no doubt that McMillin was acting within the course and scope of his duties when making the policy and training or supervision decisions at issue in this case. Accordingly,

McMillin is immune from personal liability on Plaintiffs' state law claims. *See Conrod v.*
*Holder*, 825 So. 2d 16, 19 (Miss. 2002) (affirming summary judgment on state law claims under
this section where plaintiff sued sheriff individually on negligent training claim). The Court
need not reach McMillin's arguments for immunity based on Mississippi Code Annotated
section 11-46-9.

**IV.     Conclusion**

The parties made numerous arguments, all of which the Court has considered. Those
arguments not expressly addressed herein would not change the outcome of this order. For the
reasons stated above, Defendant McMillin in his individual capacity is entitled to qualified
immunity from Plaintiffs' claims, and his motion for summary judgment is granted. The stay in
this matter is lifted, and the parties are directed to contact the magistrate judge within 14 days to
set a case management conference.

**SO ORDERED AND ADJUDGED** this the 2nd day of July, 2010.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE